IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


VEHICLE INTELLIGENCE AND          )
SAFETY LLC,                       )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    No. 13 C 4417
                                  )
MERCEDES-BENZ USA LLC and         )
DAMLER AG,                        )
                                  )
          Defendants.             )


# <u>OPINION AND ORDER</u>


Vehicle Intelligence and Safety LLC ("VIS"), the plaintiff, brings this

action against Mercedes-Benz USA, LLC and Daimler AG (collectively

"defendants") for infringement of United States Patent No. 7,394,392 entitled

"Expert System Safety Screening of Equipment Operators" (hereinafter the "'392

Patent) issued July 1, 2008 to Kevin Roe.  Jurisdiction is proper in this court

pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This is an action arising under the

United States patent statutes, 35 U.S.C. § 101 *et seq*.

The case is now before the court on defendants' Rule 12(c) motion for

judgment on the pleadings.  Defendants state that, because the '392 Patent is based

on the abstract idea that equipment operators can be tested to determine whether

they are in any way physically or mentally impaired, the claims are abstract and

not patent eligible.

The '392 Patent Abstract is as follows:

> Methods and systems using one or more expert systems to
> screen equipment operators for impairments, such as
> intoxication, physical impairment, medical impairment, or
> emotional impairment, to selectively test the equipment
> operators and control the equipment (e.g., automobiles,
> trucks, industrial vehicles, public transportation vehicles, such
> as buses, subways, trains, planes, and ships, and dangerous
> machinery in general) if impairment of the equipment operator
> is determined.  One embodiment is a method to screen an
> equipment operator for intoxication, using one or more expert
> systems.  A second embodiment is a method to screen an
> equipment operator for impairment, such as intoxication,
> physical impairment, medical impairment, or emotional
> impairment, using one or more expert systems.  A third
> embodiment is an equipment operator screening system to
> determine impairment, such as intoxication, physical
> impairment, medical impairment, or emotional impairment,
> using one or more expert systems.

The '392 Patent does not invent impairment detection methods or

devices.  The patent discloses eleven prior art patents for impairment detection

systems which are incorporated by reference.  The patent acknowledges that the

prior art patents have been issued to detect driver impairment.  Cols. 1-3.  Many of

these patents are linked to locking systems that prevent vehicle operation unless the operator passes a breath analyzer, voice analyzer, and/or skin sensor test. Cols. 2-3 (describing U.S. Patent Nos. 6,886,653; 6,748,301, & 4,738,333).

The Amended Complaint alleges that defendants have directly infringed at least claim 8 of the '392 Patent by selling each Mercedes-Benz vehicle that incorporates a feature of the vehicle referred to as ATTENTION ASSIST.

Claim 8 of the '392 Patent is an exemplary claim. It is as follows:

> A method to screen an equipment operator for impairment, comprising:
> screening an equipment operator by one or more expert systems to detect potential impairment of said equipment operator;
> selectively testing said equipment operator when said screening of said equipment operator detects potential impairment of said equipment operator;
> and controlling operation of said equipment if said selective testing of said equipment operator indicates said impairment of said equipment operator, wherein said screening of said equipment operator includes a time-sharing allocation of at least one processor executing at least one expert system.

Col. 15, ll. 30-43.

The description of the preferred embodiments includes:

Embodiments of the invention can be implemented by utilizing combinations of one or more modules (e.g., using all of a module, or using a portion of a module) already existing in the equipment as standard features. For example, in a typical vehicle there is an operations module (e.g., an equipment operations module allowing the equipment operator to determine one or more functions of equipment, such as speed of operation and direction of movement), an audio module (e.g., a sound entertainment module, or a communication module), a navigation module (e.g., a map display module), an anti-theft module (e.g., a motion detector module), and a climate control module (e.g., an air-conditioning module). Many of these modules have become very sophisticated in their operator interfaces and in their convenience to the equipment operator. These existing modules also can provide useful information on past and/or current operator actions to assist in the process of determining whether the equipment operator is truly impaired or not impaired.

Col. 6, ll. 33-49.

Additional descriptive data is as follows:

Embodiments of the invention can be constructed using one or more data processing systems already existing in the equipment modules listed above, in a time-sharing allocation of their available processors and memory. Such existing equipment modules frequently have some unused memory and unused processor time available after performing their existing module functions. Alternatively, one or more additional data processing systems (e.g., based on any commercially available microprocessor of any word bit width

- 4 -

and clock speed, a control Read-Only-Memory, or a data
processing equivalent) can be dedicated to combining the
information gathered from one or more modules listed above,
or disclosed by one or more of the prior art patents
incorporated by reference.

Col. 7, ll. 9-22.

A Rule 12(c) motion for judgment on the pleadings challenging patent

eligibility must be shown by clear and convincing evidence appearing in the patent

itself.  This rule is based on the principle that every patent is presumed to be

issued properly, absent clear and convincing evidence to the contrary.  *Microsoft

Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011); *Ultramercial, Inc. v. Hulu,

LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013); *Ariosa Diagnostics, Inc. v.

Sequenom, Inc.*, ___ F. Supp. 2d ___, 2013 WL 5863022 *4 (N.D. Cal. Oct. 30,

2013).  To defeat the presumption of validity, the only plausible reading of the

patent must reveal clear and convincing evidence of ineligibility. *Ultramercial*,

722 F.3d at 1339.

To be patent eligible, a claimed invention must be a "new and  useful

process, machine, manufacture, or composition of matter, or any new and useful

improvement thereof."  35 U.S.C. § 101.  The Supreme Court has held that there

are three narrow exceptions to statutory patent eligibility:  "laws of nature,

physical phenomena, and abstract ideas." ***Bilski v. Kappos***, 130 S. Ct. 3218, 3225 (2010) (quoting ***Diamond v. Chakrabarty***, 447 U.S. 303, 309 (1980)). To overcome a charge of abstract idea preemption it must appear that the claim limitations reflect an inventive concept that adds significantly to, and limits, the expanse of any abstract idea. ***Mayo Collaborative Serv. v. Prometheus Labs., Inc.***, 132 S. Ct. 1289, 1294-95 (2012).

Recently, in ***Ultramercial***, 722 F.3d at 1341-42 and ***Accenture Global Serv., GmbH v. Guidewire Software, Inc.***, 728 F.3d 1336, 1341 (2013), the Federal Circuit has restated the procedure that must be followed in cases in which patent eligibility is an issue. A court must first determine whether the claimed invention fits within one of the statutory classes set out in § 101. Then, it must consider whether any of the judicial exceptions to subject-mater eligibility apply. Here, the issue is: does the patent so embody an abstract idea as to preempt a field of activity?

A court must identify and define whatever fundamental abstract concept is wrapped up in the claim. It may be that the patent does not relate to an intangible abstraction in the first instance if it relates, for example, to things that people do but not to mental steps. The Federal Circuit has stressed that claim

construction may be important, even if not legally required, in the analysis of eligibility. *Ultramercial*, 722 F.3d at 1339; *Bancorp Serv., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1286, 1273-74 (Fed. Cir. 2012).

Proceeding with the preemption analysis, the claim is evaluated to determine whether additional substantive claim limitations narrow, confine, or otherwise limit the claim so that it does not cover a full abstract idea itself. *Accenture*, 728 F.3d at 1341. For abstractness to override a claim, it must "exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter." *Dealertrack v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (quoting *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010).

Claim 8 arguably fits within the "process" classification included in § 101. The patent statutes define "process" as: "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b).

Plaintiff contends that the terms of the claims fall within the Federal Circuit's "machine or transformation test" for eligibility which asks if an invention or process is tied to a particular machine or transforms a particular article into a

different logic state or thing. The Supreme Court has held, however, that the machine or transformation test is a clue, but not an exclusive test for eligibility of a process or method patent. ***Bilski***, 130 S. Ct. at 3225-27 ( method of hedging risk not eligible); ***Mayo***, 132 S. Ct. at 1296 (method of calibrating drug dosage not eligible).

Notwithstanding the results of the machine or transformation test, the question remains whether the abstractness exception applies. Plaintiff argues that this question is also foreclosed because Claim 8 could not be performed entirely in a human mind, and that this is the ultimate test for abstractness. *See **SiRF Tech., Inc. v. Int'l Trade Comm'n***, 601 F.3d 1319, 1333 (Fed. Cir. 2010). Defendants reply that whether a person is impaired--*e.g.*, intoxicated, sleepy, under stress, having a heart attack--is the type of mental thinking performed every day by countless professionals and non-professionals and clearly falls within the abstractness range.

Assuming that the subject of "detection impairment of equipment operators" is properly characterized as abstract, it must be considered whether any problem of preemption is resolved by claim limitations. Claim 8 claims a method to screen an equipment operator for impairment consisting of three steps. First,

screening an equipment operator "by one or more **expert systems**" to detect impairment. Second, selectively testing an equipment operator when screening detects potential impairment. Third, controlling operation of said equipment if testing indicates operator impairment, "wherein said screening of said equipment operator includes a time-sharing allocation of at least one **processor** executing at least one expert system."

Plaintiff contends that in order to decide the issue of eligibility, claim construction is necessary. Plaintiff does not, however, explain what would be revealed by claim construction that is not otherwise contained or explained within the patent.

Although they contend that claim construction is unnecessary, defendants predict that they would not agree with plaintiff's construction of the terms "expert system" and "controlling operation of said equipment," if claim construction occurs.

Defendants contend that "expert system" and " processor" are well-know types of general purpose computers that can be specially programmed in order to perform any particular tasks. They state that use of computers does not confer patent eligibility on an otherwise abstract idea, citing ***Dealertrack***,

674 F.3d at 1333; ***CLS Bank Int'l v. Alice Corp. Pty. Ltd.***, 717 F.3d 1269, 1286

(Fed. Cir.) (*en banc*), *cert. granted*, 134 S. Ct. 734 (2013); ***Accenture***, 728 F.3d at

1334.  Defendants state that the second element of claim 8--**"selectively testing"**

an equipment operator when screening detects impairment--provides no limitation

on the type of testing that would be performed, appears to cover any form of

testing, is too broad to be a valid claim limitation.

The patent provides that controlling the operation of the equipment can

include:

> disabling the equipment, disabling the equipment after a time
> delay, temporarily disabling the equipment for a pre-selected
> time duration, shutting off power to the equipment, limiting
> the operation of the equipment to a lower speed of operation,
> limiting the operation of the equipment to allow only the
> return the equipment to a pre-selected state or a pre-selected
> location, autonomously moving said equipment to another
> location, denying entry to the equipment, activating an alarm,
> sending a warning message to another entity for assistance,
> issuing a warning message to the impaired equipment
> operator, and/or requesting another equipment operator
> replace the impaired equipment operator and then restricting
> equipment operation if the request is not obeyed within a
> pre-selected time.

Col. 8, ll. 17-31.  It appears to broadly encompass nearly every action taken in an

impairment detection process.

The third element of claim 8 "controlling operation of said equipment if said selective testing of said equipment operator indicates said impairment of said equipment operator, wherein said screening of said equipment operator includes a time-sharing allocation of at least one processor executing at least one expert system" is said by defendants to be routine, post-solution activity conventional in every impairment-detection process and it does not provide an inventive concept necessary to limit the abstract idea of impairment detection. Defendants cite *Mayo*, 132 S. Ct. at 1298; *Bilski*, 130 S. Ct. at 3230.

Defendants also rely on a line of recent cases that indicate that the use of general computers to perform steps in a method or process will not remove a patent from attack as abstract. *See CLS Bank*, 717 F.3d 1269 (computer system to lessen settlement risk of financial trades not patent eligible); *Dealertrack*, 674 F.3d 1315 (computer system for processing credit applications not patent eligible); *Accenture*, 728 F.3d 1336 (computer system for insurance claim processing not patent eligible); *SmartGene, Inc. v. Adv. Biological Labs., SA*, ___ F. App'x ___, 2014 WL 259824 (Fed. Cir. Jan. 24, 2014) (method for selection of treatment for patient with known disease not patent eligible).

Earlier Supreme Court decisions are instructive with respect to the use of computers in process or method patents. The use of a general computer to perform the steps in an improved method of calculating alarm limits did not save a patent from attack as in ***Parker v. Flook***, 437 U.S. 584 (1978). In this case, the only novel feature was a mathematical formula. But a patent utilizing computers in a specialized novel process for curing rubber was upheld in ***Diamond v. Diehr***, 450 U.S. 175, 185 (1981).

The difficulty posed at this stage of the proceedings is that the court cannot say without equivocation whether or how computers are to be used in the '392 Patent process. Given the standards for resolution of a Rule 12(c) motion at this stage of the proceedings, the motion for judgment on the pleadings based on eligibility must be denied without prejudice to being renewed after the terms of the patent are construed.

What the briefs suggest, however, is that there may also be questions of patentability (*e.g.*, specification, *see* 35 U.S.C. § 112). But the Supreme Court and the Federal Circuit have been very clear in holding that issues of patentability are not to be conflated with, or resolved before, issues of eligibility are decided.

*Mayo*, 132 S. Ct. at 1304; *Diehr*, 450 U.S. at 190 (1972); *Ultramercial*, 722 F.3d at 1347.

IT IS THEREFORE ORDERED that defendants' motion for judgment on the pleadings [45] is denied without prejudice. A status hearing is set for March 27, 2014 at 2:00 p.m. at which the parties should be prepared to address the application of the Local Patent Rules regarding the schedule for further proceedings.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED: MARCH 13, 2014