# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

VEHICLE INTELLIGENCE AND SAFETY LLC,

                              *Plaintiff*,

      v.

MERCEDES-BENZ USA, LLC and DAIMLER AG,

                              *Defendants*.

Case No. 1:13-cv-04417

PATENT CASE

**JURY TRIAL DEMANDED**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Dated:    October 16, 2014

Mariangela M. Seale
BRYAN CAVE LLP
161 North Clark St., Ste. 4300
Chicago, Illinois 60601
Telephone: (312) 602-5117
Facsimile: (312) 698-7517
merili.seale@bryancave.com

Scott W. Doyle (*pro hac vice*)
Jonathan R. DeFosse (*pro hac vice*)
SHEARMAN & STERLING LLP
801 Pennsylvania Ave., NW, Ste. 900
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
scott.doyle@shearman.com
jonathan.defosse@shearman.com

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

RELEVANT FACTUAL BACKGROUND................................................................................3

DISCUSSION ..................................................................................................................4

I.     The Asserted Claims Are Drawn to the Abstract Idea of Testing Equipment Operators for Impairment ..................................................................................5

II.    The Asserted Claims Do Not Contain an "Inventive Concept" Sufficient to Confer Patent Eligibility ...........................................................................................8

        A.    Claim 8 Does Not Contain an "Inventive Concept" ................................8

               1.    "[S]creening," "selectively testing," and "controlling operation" are conventional steps that could be performed in the human mind ................8

               2.    Using a "processor executing at least one expert system" is not an "inventive concept" under § 101.............................................................10

               3.    Considering claim 8 as an "ordered combination" does not yield an "inventive concept"..................................................................................14

        B.    Independent Claim 16 Does Not Contain an Inventive Concept...........................15

        C.    The Dependent Claims Also Fail to Disclose an Inventive Concept....................16

CONCLUSION..............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013)..................................................................................11, 12, 13

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. ___, 134 S. Ct. 2347 (2014)........................................................... *passim*

*Bilski v. Kappos*,
   561 U.S. 593, 130 S. Ct. 3218 (2010)....................................................................6, 9

*buySAFE, Inc. v. Google, Inc.*,
   No. 2013-1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014) ...................................5

*CLS Bank Int'l v. Alice Corp.*,
   717 F.3d 1269 (Fed. Cir. 2013)................................................................................5

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*,
   No. 12-cv-205, 2014 WL 3542055 (D. Del. July 16, 2014)...................................18

*CybersSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)...........................................................................6, 7

*Data Distribution Techs, LLC v. Brer Affiliates, Inc.*,
   No. 12-4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014) .......................................7

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012)...............................................................5, 11, 12, 16

*DietGoal Innovations LLC v. Bravo Media LLC*,
   No. 13-cv-8391, 2014 WL 3582914 (S.D.N.Y. July 8, 2014)......................7, 12, 13

*Digitech Image Techs, LLC v. Electronics for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014).............................................................................7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)......................................................................................8, 9

*McRO, Inc. v. Atlus U.S.A.*,
   No. 13-cv-1870, 2014 WL 4772196 (C.D. Cal. Sept. 22, 2014) ............................5

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 13-cv-4843, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014)............................13

*PerkinElmer, Inc. v. Intema Ltd.*,
    496 Fed. Appx. 65 (Fed. Cir. 2012).........................................................................17

*Planet Bingo, LLC v. VKGS LLC*,
    No. 2013-1663, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) ..................................7

*SmartGene, Inc. v. Advanced Biological Labs., SA*,
    555 Fed. Appx. 950 (Fed. Cir. 2014).............................................................. *passim*

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
    No. 13-cv-1771, 2014 WL 4382446 (D. Del. Sept. 3, 2014).............................7, 13

**Statutes**

35 U.S.C. § 101 ................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(c) .................................................................................................1, 5

Defendants Mercedes-Benz USA, LLC and Daimler AG (collectively "Defendants") respectfully move pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings.

## INTRODUCTION

Since the Court's decision in March denying Defendants' motion for judgment on the pleadings without prejudice pending claim construction (Dkt. 62), two events have further led to the inescapable conclusion that the asserted claims of U.S. Patent No. 7,394,392 (the '392 patent) are directed to an abstract idea (testing equipment operators for impairment) that is ineligible for patenting under § 101.

First, in June, the Supreme Court issued its decision in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. ___, 134 S. Ct. 2347 (2014), reiterating that an abstract idea does not qualify for patent protection merely by reducing the idea to a series of routine steps that are implemented using a computer. *Id.* at 2357. The Supreme Court also emphasized that reciting "generic computer components configured to implement [an abstract] idea" is insufficient under § 101. *Id.* at 2360. Since June, numerous Federal Circuit and District Court cases have invalidated patent claims under § 101 on the basis of the holding in *Alice Corp.* Those cases strongly support Defendants' motion. *See* Part I, below. Indeed, the asserted claims of the '392 patent are far more abstract than the claims at issue in *Alice Corp.* or any of the other recent § 101 cases.

Second, this Court's recent claim construction order bolsters Defendants' motion because the order highlights that the asserted claims of the '392 patent amount to a series of conventional steps that are implemented in a non-specific way using generic computer components. The primary claim at issue in this case is claim 8, which has three basic steps: (i) "screening" an equipment operator for impairment; (ii) "testing" for impairment; and (iii) "controlling operation" of the equipment in response to the impairment test. These steps are the very model of "conventional steps, specified at a high level of generality." *See Alice Corp.*, 134 S. Ct. at

2357. Indeed, the "screening" and "testing" steps would encompass testing for any type of impairment, using any method of testing, applied to any kind of equipment operator. Moreover, as the Court previously recognized, "controlling operation" of the equipment appears to be defined in such a way as "to broadly encompass nearly every action taken in an impairment detection process." (*See* Dkt. 62 at 10.)

Beyond the generic "screening," "testing," and "controlling" functions, the only remaining element of claim 8 is the use of a "processor" executing an "expert system" to perform the screening step. The Court has construed "expert system" to mean:

> [A] computer program consisting of (1) a database module that contains information a specialist would consider in an analysis of the equipment operator for impairment; (2) a decision module that applies logic for screening and testing an equipment operator for impairment and for controlling equipment; and (3) an interface module which interfaces with one or more equipment modules and the equipment operator. (Dkt. 92 at 9.)

Under this construction, the "expert system" of the '392 patent amounts to a compilation of generic components that are "configured to implement" the idea of impairment testing. *Alice Corp.*, 134 S. Ct. at 2360. Nearly every computer will contain a "processor," a "database," a "decision module" that "applies logic," and a means to "interface" with a user and equipment. Indeed, almost exactly the same components were at issue in *Alice Corp.*, which concerned a computer to intermediate the settlement of financial transactions. Like the '392 patent, the *Alice Corp.* computer included a "data storage unit" (i.e., a database) that was configured to store "information" relevant to the computer's function. *See id.*; *see also* Ex. B at col. 67, ll. 2-5.[1] The *Alice Corp.* computer also had a "data processing system" (i.e., a processor and a decision module) configured to apply logic to make determinations about whether to allow proposed

---

[1] Exhibit B is U.S. Patent No. 7,725,375, which was one of the patents at issue in *Alice Corp.* Claim 26 of the '375 patent was invalidated by the Supreme Court and can be found at column 66, line 63, to column 67, line 27, of Exhibit B.

financial transactions to proceed.  *See id.*  Upon deciding to allow a transaction, the computer in

*Alice Corp.* would interface with equipment (e.g., by "electronically adjust[ing]" accounts) and

also interface with the financial institutions using the computer.  *See id*; *see also* Ex. B at col. 67,

ll. 8-27.  There is no meaningful distinction between the computer components at issue in *Alice*

*Corp.* and those set forth in the '392 patent.  Moreover, as is detailed below, numerous other

cases have found that components nearly identical to those recited in the '392 patent are generic

computer components that do not amount to a sufficient "inventive concept" under § 101.  *See*

Part II.A.2, below.  As in those cases, the asserted claims here should be invalidated under § 101.

## RELEVANT FACTUAL BACKGROUND

The '392 patent, entitled "Expert System Safety Screening of Equipment Operators," was

issued on July 1, 2008.  According to the Abstract, the '392 patent is concerned with "[m]ethods

and systems using one or more expert systems to screen equipment operators for impairments."

(Dkt. 31, Ex. 1 at Abstract.)  The '392 patent is not limited to testing any particular type of

impairment.  Rather, as explained in the specification, the methods and systems of the '392

patent are directed to testing for any type of "physical," "medical," or "emotional" impairment,

including "alcohol intoxication, chemical intoxication, or equivalent conditions[,] . . . sudden

injury from accident or violence against the equipment operator, blindness, lack of air, a

poisonous or disabling gas or dust, or equivalent conditions[,] . . . stroke, heart attack, diabetic

coma, exhaustion, infectious disease, or equivalent conditions[,] . . . grief, anger, psychosis,

anxiety, euphoria, or equivalent conditions."  (*Id.* at col. 5, ll. 29-38.)

The '392 patent does not claim to have invented impairment testing systems generally,

nor any particular method of detecting any of the myriad impairments purportedly encompassed

within the patent.  Indeed, the '392 patent cites nearly a dozen prior art impairment detection

systems dating back to the 1970s.  (Dkt. 31, Ex. 1 at cols. 1 – 3.)  The alleged invention of the

3

'392 patent is instead described as the use of an "expert system safety screening approach" to impairment detection. Although "expert system" is not expressly defined anywhere in the '392 patent, the Court construed that term to mean a computer program with a "database," "decision module," and "interface module," as set forth above. (*See* Dkt. 92.)

Plaintiff Vehicle Intelligence and Safety LLC ("VIS") accuses Defendants of infringing claims 8, 9, and 11-18 of the '392 patent, each of which is reproduced in the discussion below.

## DISCUSSION

Section 101 of the Patent Act provides that four broad categories of subject matter are eligible for patenting:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Despite the broad wording of the statute, the Supreme Court has recognized that there is an important limitation on patent eligibility: a person cannot obtain a patent on laws of nature, natural phenomena, or abstract ideas. *Alice Corp.*, 134 S. Ct. at 2354. The fundamental concern underlying this limitation is that "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technical work." *Id.* "[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Id.*

While abstract ideas are not eligible for a patent, particular *applications* of abstract ideas may be patent-eligible. *Alice Corp.*, 134 S. Ct. at 2354. As such, in applying § 101, courts must distinguish between patents that claim an abstract idea and "those that integrate the [abstract idea] into something more, thereby transforming [it] into a patent-eligible invention." *Alice Corp.*, 134 S. Ct. at 2354. To perform this analysis, the Supreme Court has established a two-part test. First, a court must determine whether the patent claims at issue are directed to an abstract idea, law of nature, or natural phenomena. *Id.* at 2355. Second, a court must "consider

the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* This second prong is referred to as the search for an "inventive concept" and requires that "the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* The Supreme Court has stressed that "conventional steps, specified at a high level of generality" do not reflect an "inventive concept." *Id.* at 2357. Similarly, reciting "generic computer components configured to implement [an abstract] idea" is not an "inventive concept." *Id.* at 2360.

Whether a patent satisfies the requirements of § 101 is an issue of law that is properly resolved on a motion for judgment on the pleadings under Rule 12(c). *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, No. 2013-1575, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014); *McRO, Inc. v. Atlus U.S.A.*, No. 13-cv-1870, 2014 WL 4772196 (C.D. Cal. Sept. 22, 2014) (granting motion for judgment on the pleadings due to patent ineligibility under § 101).

## I.     THE ASSERTED CLAIMS ARE DRAWN TO THE ABSTRACT IDEA OF TESTING EQUIPMENT OPERATORS FOR IMPAIRMENT

The asserted claims in this case are drawn, on their face, to the concept of testing equipment operators for impairment.  (*See, e.g.*, Dkt. 31, Ex. 1 at col. 15, ll. 30-31 ("A method to screen an equipment operator for impairment").)  This concept easily qualifies as an abstract idea under Supreme Court and Federal Circuit precedent.

The Federal Circuit has explained that "disembodied" concepts that are "untethered" from specific applications fall within the category of abstract ideas. *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1286 (Fed. Cir. 2013).  For, example, the Federal Circuit has held that the "concept of processing information through a clearinghouse" is an abstract idea.  *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).  The Supreme Court has similarly found

that "fundamental" and "long prevalent" practices, such as "risk hedging" and "the use of a third party to mitigate settlement risk," are abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3231(2010); *Alice Corp.*, 134 S. Ct. at 2356.

As in *Alice Corp.* and *Bilski*, testing equipment operators for impairment is a disembodied concept that has long been prevalent in society.[2] Moreover, the claims of the '392 patent are not "tethered" to any specific application of impairment testing. To the contrary, the "screening" and "testing" of the '392 patent could be applied to detect literally any type of physical, medical, or emotional impairment, ranging from a heart attack, to an infectious disease, to anxiety. (*See* Dkt. 31, Ex. 1 at col. 5, ll. 29-38.) The asserted claims also seek to cover any conceivable way of testing for impairment. As such, the claims recite a disembodied, long prevalent, and untethered abstract idea under Supreme Court and Federal Circuit precedent.

The Federal Circuit has also held that methods "which can be performed entirely in the human mind" are abstract ideas. *CybersSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). For example, the Federal Circuit recently held that the concept of ranking and selecting treatment regimens for sick patients is an abstract idea because the process is one that doctors routinely perform in their minds. *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950, 954-55 (Fed. Cir. 2014); *see also CybersSource Corp.*, 654 F.3d at 1373 (holding that verifying the validity of credit card transactions constitutes an abstract idea because it could be performed in the human mind).

The concept of impairment testing also falls easily into this category of abstract ideas. Determining whether someone is suffering from a physical, medical, or emotional impairment is

---

[2] *See, e.g.*, Exhibit A, Robert F. Borkenstein, Historical Perspective: North American Traditional and Experimental Response, Journal of Studies on Alcohol, Supplement No. 10, 5 (July 1985) ("As early as 1912 Professor E.M.P. Widmark of the University of Lund in Sweden correlated quantitative analyses of body fluids with measures of impaired behavior and conceived the idea of applying this observation to transportation safety.").

a mental process that is carried out on countless occasions every day by doctors, EMTs, police officers, priests, and spouses, among others.  For example, based on observing the scene of an accident, EMTs commonly determine whether a person has suffered "sudden injury from accident or violence"; likewise, doctors determine on a daily basis whether patients are suffering from a "heart attack" or "exhaustion"; similarly, spouses routinely determine that their partners are "angry" or "anxious."  Such impairment testing is a mentally performable process that is at least as routine as selecting courses of medical treatment (as in *SmartGene*) or validating credit card transactions (as in *CyberSource*).

The concept of testing equipment operators for impairment is also far more abstract than the abstract ideas identified in numerous recent Federal Circuit and District Court decisions.  For example, in *Digitech Image Techs, LLC v. Electronics for Imaging, Inc.*, the Federal Circuit held that the concept of creating an electronic "profile" describing the attributes of a digital imaging device was an abstract idea.  758 F.3d 1344, 1350 (Fed. Cir. 2014).  In *Data Distribution Techs, LLC v. Brer Affiliates, Inc.*, the court held that "maintaining a database and updating users about new information" is an abstract idea.[3]  No. 12-4878, 2014 WL 4162765, at *11 (D.N.J. Aug. 19, 2014).  The concept of impairment testing is at least as abstract as the creation of device profiles (*Digitech*), maintaining a database and updating users (*Data Distribution Techs.*), selecting meals based on dietary goals (*DietGoal*), addressing tampering problems with bingo ticket purchases (*Planet Bingo*), and upselling as part of online sales transactions (*Tuxis*).

---

[3] *See also DietGoal Innovations LLC v. Bravo Media LLC*, No. 13-cv-8391, 2014 WL 3582914, at n.1 (S.D.N.Y. July 8, 2014) ("[S]electing meals for the day according to one's particular dietary goals and food preferences."); *Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014) ("'[S]olv[ing a] tampering problem and also minimize[ing] other security risks' during bingo ticket purchases."); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-cv-1771, 2014 WL 4382446, at *3 (D. Del. Sept. 3, 2014) "[T]he fundamental concept of upselling – a marketing technique as old as the field itself.").

## II. THE ASSERTED CLAIMS DO NOT CONTAIN AN "INVENTIVE CONCEPT" SUFFICIENT TO CONFER PATENT ELIGIBILITY

Having identified the abstract idea to which the asserted claims are directed, it is next necessary to determine whether the elements of those claims set forth an "inventive concept" sufficient to transform the claims into a "patent-eligible application" of impairment testing. *Alice Corp.*, 134 S. Ct. at 2355.

### A. Claim 8 Does Not Contain an "Inventive Concept"

The primary claim at issue in this case is claim 8, which is comprised of three basic steps:

> 8. A method to screen an equipment operator for impairment, comprising:
>
> > screening an equipment operator by one or more expert systems to detect potential impairment of said equipment operator;
> >
> > selectively testing said equipment operator when said screening of said equipment operator detects potential impairment of said equipment operator; and
> >
> > controlling operation of said equipment if said selective testing of said equipment operator indicates said impairment of said equipment operator, wherein said screening of said equipment operator includes a time-sharing allocation of at least one processor executing at least one expert system.

These steps – whether taken individually or as an "ordered combination" – do not provide any "inventive concept."

#### 1. "[S]creening," "selectively testing," and "controlling operation" are conventional steps that could be performed in the human mind

"Simply appending conventional steps, specified at a high level of generality," is "not enough to supply an inventive concept." *Alice Corp.*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)). The Supreme Court's decision in *Mayo* illustrates this principle. There, the patent claimed a method for calibrating the proper dosage levels for thiopurine drugs that are used in the treatment of autoimmune diseases.

*See* 132 S. Ct. at 1294. The dosage levels were calibrated using a patent-ineligible law of nature related to metabolite levels. The patent owner, however, argued that the claimed method was patent-eligible because it added the steps of "determining" metabolite levels and "administering" the drug. *Id.* at 1297. The Supreme Court rejected the patent owner's argument, noting that the additional steps were merely conventional activity: "[a]nyone who wants to make use of these [natural] laws must first administer a thiopurine drug and measure the resulting metabolite concentrations." *Id.* at 1298. The Court noted that a claim cannot become eligible for patenting through the addition of such steps that "consist of well-understood, routine, conventional activity already engaged in by the scientific community." *Id.*

Here, the claim 8 steps of "screening" and "selectively testing" an equipment operator for impairment are routine and conventional aspects of impairment testing that are specified at the highest level of generality. Indeed, as noted above, the screening and testing steps are not confined to detection of any particular type of impairment nor to any specific kind of detection method. Rather, the claims seek to cover ***any*** method of testing for ***any*** kind of impairment. Such generic limitations are insufficient because they "would effectively grant a monopoly over" the abstract idea of impairment testing itself. *Bilski*, 130 S. Ct. at 3231; *accord Digitech*, 758 F.3d at 1351 (holding patent invalid under § 101 because asserted claim was "so abstract and sweeping as to cover any and all uses of a device profile").

The step of "controlling operation" of the equipment is also routine and conventional. As the Court has previously recognized, the '392 patent defines "controlling operation" in a way that appears "to broadly encompass nearly every action taken in an impairment detection process." (Dkt. 62 at 10; *see also* Dkt. 31, Ex. 1 at col. 8, ll. 14-21.) As such, the "controlling" step does nothing to meaningfully limit the abstract idea of impairment detection. *Mayo*, 132 S.

9

Ct. at 1298 ("The prohibition against patenting abstract ideas cannot be circumvented by adding insignificant post-solution activity.")

The steps of claim 8 also fail under § 101 because each step could be – and commonly is – performed in the human mind. For example, a police officer may screen drivers for intoxication at a sobriety check-point by asking a series of questions and observing how the drivers respond. Drivers with slurred speech or who smell of alcohol may be selectively subjected to a further field sobriety test. Upon determining that a driver has failed the field test, the officer may inform the driver of the results of the test and impound the driver's vehicle. Courts have repeatedly held that such mentally-performable steps are ineligible for patenting under § 101. *See, e.g., Smartgene*, 555 Fed. Appx. at 954 ("[S]ection 101 covers neither 'mental processes' . . . nor processes that merely invoke a computer and its basic functionality for implementing such mental processes, without specifying even arguably new physical components or specifying processes defined other than by the mentally performable steps.").

### 2. Using a "processor executing at least one expert system" is not an "inventive concept" under § 101

Claim 8 also provides that the step of "screening" an equipment operator for potential impairment is implemented using an "expert system" that "includes a time-sharing allocation of at least one processor." Such generic computer automation of the conventional "screening" step does not amount to an "inventive concept."

It is, by now, well-established that an abstract idea does not become patent-eligible merely by indicating that a computer can be used to implement the idea in some general way. *Alice Corp.*, 134 S. Ct. at 2358 ("These cases demonstrate that the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."). For example, in *Alice Corp.*, the asserted claims required use of a computer as a third party to

mitigate settlement risk. *Id.* at 2359. The computer performed the steps of creating account records, obtaining account data, adjusting account balances, and issuing automated instructions to execute valid transactions. *Id.* The intermediary computer of the patent claims was also comprised of various components – including a "data storage unit," a "data processing system," and a "communications controller" – that were configured to implement the settlement process. *Id.* at 2360.

Despite these computer-related limitations, the Supreme Court found the claims at issue in *Alice Corp.* to be deficient under § 101. *Id.* The Court first explained that generally requiring some non-specific computer implementation of "purely conventional" steps is not an inventive concept. *Id.* at 2359. The Court also held that use of commonplace computer components – such as a data storage unit – is insufficient under § 101. *Id.* at 2360; *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (finding claim abstract despite "recitation of a combination of computer components including an insurance transaction database, a task library database, a client component, and a server component, which includes an event processor, a task engine, and a task assistant."); *Dealertrack*, 674 F.3d at (finding claim abstract despite use of a "central processor" because the patent was "silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method.").

Under the principles articulated in *Alice Corp.*, *Accenture*, and *Dealertrack*, the inclusion of an "expert system" does not transform claim 8 into a patent-eligible application of concept of impairment testing. First, the "expert system," as construed by the court, is merely a generic computer, as in *Alice Corp.*, performing the otherwise conventional steps of screening for impairment. The claims do not require that the expert system be programed to perform the

11

function in any specific way; indeed, as noted above, the claim seeks to cover any type of testing for any kind of impairment. As the Federal Circuit observed in *Dealertrack*, "[b]ecause the computer here can be programmed to perform very different tasks in very different ways . . . it does not play a significant part in permitting the claimed method to be performed." 674 F.3d at 1333.

Moreover, claim 8 does not recite any new or improved computer technology or provide new physical components. To the contrary, pursuant to the Court's recent claim construction, the components of the "expert system" of the '392 patent cover hardware and software that fall squarely within the category of generic computer components that courts have held to be insufficient under § 101. *See, e.g.*, *SmartGene, Inc.*, 555 Fed. Appx. at 955 ("The claim does not purport to identify new computer hardware: it assumes the availability of physical components for input, memory, look-up, comparison, and output."); *DietGoal Innovations LLC*, 2014 WL 3582914, at *15 (claims ineligible where they "merely describe generic computer components that can be found on any general-purpose computer, such as a user interface, database, or visual display."). Indeed, as the table below indicates, courts have repeatedly found that each of the components recited in claim 8 is insufficient to transform an abstract idea into patent-eligible subject matter.

| Claim 8 component | Analogous component found insufficient under § 101 |
|---|---|
| a **processor** | A "'**central processor**,' which receives credit application data from dealers, processes the data to conform to the individual application forms of different banks, forwards the completed applications to banks selected by the dealer, receives answers from the banks, and forwards those answers back to the dealer." *Dealertrack*, 674 F.3d at 1316.<br><br>"An event **processor** interacts with an insurance transaction database containing information related to an insurance transaction." *Accenture*, 728 F.3d at 1338. |

| | |
|---|---|
| | "A data **processing** system." *Alice Corp.*, 134 S. Ct. at 2360.<br><br>A "dialog computer comprising a **processor** and a tangible computer readable medium storing instructions." *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-4843, 2014 WL 4684429, at *2 (N.D. Cal. Sept. 19, 2014). |
| a **database module** that contains information a specialist would consider in an analysis of an equipment operator for impairment | "[A] **database** of food objects organizable into meals." *DietGoal Innovations LLC*, 2014 WL 3582914, at *1.<br><br>A "**data storage unit**" that contains information about accounts involved in a transaction. *Alice Corp.*, 134 S. Ct. at 2360; *see also* Ex. B at col. 67:1-7 (U.S. Patent No. 7,725,375, which was invalidated in the *Alice Corp.* case).<br><br>"Claim 1 places only very broad limitations on a 'computing device': it must contain – like a doctor's mind – a set of 'expert rules for evaluating and selecting' from a stored 'plurality of different therapeutic regimens,' as well as 'advisory information useful for the treatment of a patient with different constituents of said different therapeutic treatment regimens." *SmartGene*, 555 Fed. Appx. at 955.<br><br>"[A]n insurance transaction **database** for storing information related to an insurance transaction." *Accenture*, 728 F.3d at 1338. |
| a **decision module that applies logic** for screening and testing an equipment operator for impairment and control equipment | "[T]he task engine identifies rules in the task library database associated with the event and applies the information to the identified rules to determine the tasks to be completed, and populates on a task assistant the determined tasks to be completed." *Accenture*, 728 F.3d at 1338.<br><br>A "computing device" that generates "advisory information for one or more therapeutic treatment regimes." *SmartGene*, 555 Fed. Appx. at 952.<br><br>A "data processing system" that "electronically adjust[s]" accounts "after ensuring that [the accounts] have adequate value." *Alice Corp.*, 134 S. Ct. at 2360; Ex. B at col. 67, ll. 8-27. |
| an **interface module** which interfaces with one or more equipment modules and the equipment operator | "[A] **user interface**." *DietGoal Innovations LLC*, 2014 WL 3582914, at *1.<br><br>"[A] dialog computer **interfaced with the data storage location and a communications channel**." *Open Text S.A.*, 2014 WL 4684429, at *2.<br><br>"[A] client component in communication with the insurance transaction database configured for providing information relating to the insurance transaction, said client component enabling access by an assigned claim handler to a plurality of tasks that achieve an insurance related goal upon completion." *Accenture*, 728 F.3d at 1338.<br><br>"[A] computing device having routine **input**, memory, look-up, comparison, and output capabilities." *SmartGene*, 555 Fed. Appx. at 954.<br><br>"[E]stablishing a communication via the electronic communications device between the user and the system for [the] purpose of a user initiated primary transaction for purchase of specific good or service." *Tuxis Techs.*, 2014 WL 4382446, at *1. |

13

### 3. Considering claim 8 as an "ordered combination" does not yield an "inventive concept"

Analyzing the elements of claim 8 as an "ordered combination" results in the same conclusion as considering the elements separately. The claims simply track the mental steps commonly taken by doctors, police officers, EMTs, spouses, and countless others and provide that those steps are implemented in a non-specific way using the generic components of the "expert system." Thus, considering the elements together merely indicates the generic computer implementation of a conventional process, which is exactly what the Supreme Court rejected in *Alice Corp.*, 134 S. Ct. at 2359-60 ("Viewed as a whole, petitioner's method claims simply recite the concept of intermediated settlement as performed by a generic computer.").

It is also instructive to compare the combined elements of claim 8 to the combined elements at issue in *Smartgene*. Although *Smartgene* was directed to a detailed expert system, the Federal Circuit still found that the claims were patent ineligible abstract ideas. Indeed, the *Smartgene* claims were found ineligible even though they required three knowledge bases containing therapeutic treatment regimens for diseases or medical conditions, "expert rules for evaluating and selecting a therapeutic treatment regimen," and "advisory information useful for the treatment of a patient with different constituents of said different therapeutic treatment regimens." 555 Fed. Appx. at 952. In contrast, the asserted claims of the '392 patent generically require "screening" and "testing" using an expert system comprised of: (i) a database containing "information" (as opposed to *Smartgenes*'s three knowledge bases with "expert rules"); (ii) a decision module that generically applies "logic" (as opposed to *Smartgene*'s "computing device that ranks treatments regimens and provides "advisory information"); and (iii) an "interface module" (as opposed to *Smartgene*'s means for providing patient information to the computing device). Unlike the *Smartgene* claims, the "logic" of the VIS expert system is not limited to

"expert rules," and the "information" in the database is not limited to any particular categories

(e.g., information about treatment regimens). As such, the asserted claims, even when taken as

an ordered combination, present far less of an "inventive concept" than the patent at issue is

*Smartgene*, which was nonetheless found ineligible under § 101.

### B. Independent Claim 16 Does Not Contain an Inventive Concept

Claim 16 of the '392 patent is directed to a system for screening for impairment:

> 16. A system to screen an equipment operator, comprising:
>
> a screening module to screen and selectively test an equipment operator when said screening indicates potential impairment of said equipment operator, wherein said screening module utilizes one or more expert system modules in screening said equipment operator; and
>
> a control module to control operation of said equipment if said selective testing of said equipment operator indicates said impairment of said equipment operator,
>
> wherein said screening module includes one or more expert system modules that utilize at least a portion of one or more equipment modules selected from the group of equipment modules consisting of: an operations module, an audio module, a navigation module, an anti-theft module, and a climate control module.

Similar to claim 8, claim 16 provides for "modules" that "screen" equipment operators

for impairment, "selectively test" potentially impaired operators, and "control operation" of the

equipment in response to the impairment testing. Again, the "screening" is performed using an

"expert system." As with claim 8, claim 16 is not limited to any particular type of impairment,

does not require any specific method of impairment testing, and does not specify how the "expert

system" would be programmed to perform the "screening." The "screening module," "expert

system," and "control module" elements of claim 16 fail to set forth an "inventive concept" for

the same reasons that the parallel limitations of claim 8 are deficient. *See* Part II.A, above.

15

In addition to the above elements, claim 16 also requires the expert system to "utilize at least a portion of . . . an operations module, an audio module, a navigation module, an anti-theft module, [or] a climate control module." This added language does not amount to an inventive concept. First and foremost, the element does not meaningfully limit the concept of impairment detection because it does not specify how the expert system must "utilize at least a portion" of the various "modules." *See, e.g.*, *Dealertrack*, 674 F.3d at 1333 ("Because the computer here can be programmed to perform very different tasks in very different ways . . . it does not play a significant part in permitting the claimed method to be performed."). As such, the additional language of claim 16 does not add anything beyond the Court's construction of "expert system," which already required the system to "interface with one or more equipment modules." In addition, requiring that impairment testing utilize information about how equipment is operated is a conventional practice long present in impairment detection. For example, a police officer may observe how a vehicle is being operated in reaching a conclusion as to whether the equipment operator is potentially impaired. Appending such a conventional and long-prevalent element to the claim does not constitute an inventive concept.

### C. The Dependent Claims Also Fail to Disclose an Inventive Concept

In addition to independent claims 8 and 16, VIS has also alleged infringement of dependent claims 9, 11-15, and 17-18. These claims, whether considered individually, or in combination with claim 8 or 16, do not contain any "inventive concept" that would qualify for patent protection.

| Claim(s) | Exemplary Claim Language[4] | Analysis |
|---|---|---|
| 9, 12 | 9. The method of claim 8, wherein said screening of said equipment operator includes utilization of at least a portion of one or more existing equipment modules selected from the group of existing equipment modules consisting of: an operations module, an audio module, a navigation module, an anti-theft module, and a climate control module. | This limitation mirrors the language of claim 16 addressed in Section II.B, above. As noted in that section this is not a meaningful limitation on the concept of impairment testing because (i) the claim does not require that the various "modules" be "utilized" in any particular way and, (ii), basing impairment determinations on information about the operation of equipment is a long-prevalent and conventional step of impairment testing. |
| 11, 18 | 11. The method of claim 8, further comprising measuring at least one characteristic of said equipment operator including one or more characteristics selected from the group consisting of: at least one chemical in proximity to said equipment operator, breathing rate of said equipment operator, blood pressure of said equipment operator, blood pulse rate of said equipment operator, blood oxygen level of said equipment operator, electrical resistance of a portion of skin of said equipment operator, electrical conductivity of a portion of skin of said equipment operator, temperature of a portion of skin of said equipment operator, one or more optical characteristics of at least one eye of said equipment operator, optical response to at least one stimulus of at least one eye of said equipment operator, at least one speech characteristic of said equipment operator, comparison of at least one speech characteristic of said equipment operator to a reference speech characteristic of said equipment operator, a speed of dexterity of said equipment operator in performing at least one task, and a consistency of dexterity of said equipment operator in performing at least one | Claim 11 provides a long list of factors that may be "measured" to detect impairment. This list of characteristics correlated with impairment is a prototypical example of nonpatentable laws of nature. The Federal Circuit's decision in *PerkinElmer, Inc. v. Intema Ltd.* is directly on-point and bars such claims under § 101. 496 Fed. Appx. 65, 71 (Fed. Cir. 2012) ("The 'measuring' steps are insufficient to make the claims patent-eligible. They merely tell the users of the process to measure the screening markers through whatever known method they wish. . . . These steps tell the user to engage in well-understood, routine, conventional activity previously engaged in by scientists who work in the field."). |

---

[4] Where multiple claims have parallel elements, Defendants have reproduced the language of an exemplary claim.

| Claim(s) | Exemplary Claim Language[4] | Analysis |
|---|---|---|
| | task. | |
| 13, 17 | 13. The method of claim 8, wherein said controlling operation of said equipment includes one or more control responses selected from the group of control responses consisting of: disabling said equipment, disabling said equipment after a time delay, temporarily disabling said equipment for a preselected time duration, shutting off power to said equipment, limiting operation of said equipment to a lower speed of 20 operation, limiting the operation of said equipment to allow only return of said equipment to a pre-selected state, limiting the operation of said equipment to allow return of said equipment to a pre-selected location, autonomously moving said equipment to another location, denying entry to said equipment, activating an alarm, sending a warning message to another entity for assistance, issuing a warning message to an impaired equipment operator, and making a request for another equipment operator to replace an impaired equipment operator and then restricting operation of said equipment if said request is not obeyed within a pre-selected time. | Claim 13 lists the many examples of "controlling operation" of the equipment. As noted with respect to claim 8, this list indicates that "controlling operation" is merely a convention step because it includes even the routine step of reporting the results of an impairment test. (*See* Dkt. 62 at 10 (language appears to "broadly encompass nearly every action taken in an impairment detection process").) |
| 14 | 14. The method of claim 8, wherein said selective testing of said equipment operator includes a time-sharing allocation of one or more processors of one or more existing equipment modules executing one or more expert systems. | Claim 14 requires that the selective testing be done using a "processor." As noted in Section II.A, above, a "processor" is a generic computer component the use of which does not amount to an inventive concept. |
| 15 | 15. The method of claim 8, wherein said selective testing selectively changes according to one or more other factors chosen from the group of factors consisting of air temperature, oxygen level, carbon dioxide level, carbon monoxide levels, nitrous oxide levels, hydrocarbon vapor levels, the presence of any gas associated with impairment, air humidity, air pressure, time of day, time duration of vehicle parking, voice loudness levels in proximity to said equipment, history of | Claim 15 provides that the impairment testing changes in response to one or more of several listed factors. This claim itself represents the abstract idea of making a conditional decision. *See Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, No. 12-cv-205, 2014 WL 3542055, at *4 (D. Del. July 16, 2014) (concept of making a conditional |

| Claim(s) | Exemplary Claim Language[4] | Analysis |
|---|---|---|
| | operation of said equipment by said equipment operator, initial beginning of operation of said equipment by said equipment operator, and ongoing operation of said equipment by said equipment operator. | determination is ineligible for patenting under § 101); *see also PerkinElmer*, 496 Fed. Appx. at 70-71 (process of taking subsequent down syndrome test depending on the results of a first test is not patentable under § 101).

It does not meaningfully limit the concept of impairment testing because it does not confine the asserted claims to testing any particular type of impairment or use of any particular type of testing. Moreover, the step of claim 15 could be (and frequently is) performed entirely in the human mind. For example, a police officer may consider the "history of operation of said equipment by said equipment operator" – e.g., previous DUI convictions – and opt for a more rigorous testing based on that consideration. |

As is reflected in the above chart, the asserted dependent claims do not reflect any inventive concept that would transform any of those claims into a patent-eligible application of impairment testing.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment on the pleadings in favor of Defendants because asserted claims 8, 9, and 11-18 are drawn to ineligible subject matter under 35 U.S.C. § 101.

Dated:    October 16, 2014

Respectfully submitted,

/s/ Mariangela M. Seale
Kara E. F. Cenar
Mariangela M. Seale
BRYAN CAVE LLP
161 North Clark St., Ste. 4300
Chicago, Illinois 60601
Telephone: (312) 602-5117
Facsimile: (312) 698-7517
kara.cenar@bryancave.com
merili.seale@bryancave.com


Scott W. Doyle (*pro hac vice*)
Jonathan R. DeFosse (*pro hac vice*)
SHEARMAN & STERLING LLP
801 Pennsylvania Ave., NW, Ste. 900
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
scott.doyle@shearman.com
jonathan.defosse@shearman.com

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused copies of (i) Defendants' Motion for Judgment on the

Pleadings, and (ii) Defendants' Memorandum of Law in Support of the Motion for Judgment on

the Pleadings and accompanying exhibits to be filed electronically with the Clerk of the Court

using the CM/ECF system on this 16th day of October, 2014, which will automatically forward

notice to the following registered individuals:

Anthony G. Simon
Benjamin R. Askew
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Telephone: (314) 241-2929
asimon@simonlawpc.com
baskew@simonlawpc.com

Timothy E. Grochocinski
Aaron W. Purser
INNOVALAW, P.C.
1900 Ravinia Place
Orland Park, IL 60462
Telephone: (708) 675-1974
teg@innovalawpc.com
apurser@innovalawpc.com

*Attorneys for Plaintiff Vehicle Intelligence and Safety LLC*

/s/ Mariangela M. Seale
Mariangela M. Seale