# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **VEHICLE INTELLIGENCE AND SAFETY LLC,** | Case No. 1:13-cv-04417 |
| Plaintiff, | PATENT CASE |
| v. | |
| **MERCEDES-BENZ USA, LLC and DAIMLER AG,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF VEHICLE INTELLIGENCE AND SAFETY LLC'S
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON
THE PLEADINGS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
I.   INTRODUCTION .......................................................................................................... 1
II.  LEGAL STANDARD .................................................................................................... 2
III.  ARGUMENT .................................................................................................................. 4
   A.  The Asserted Claims Are Not Directed To An Abstract Idea. ............................. 5
      1.  The '392 Patent Claims Present No Risk of Pre-emption And Are Therefore Patent Eligible ................................................................................................................. 5
      2.  Defendants' Argument Does Not Pass Step One of *Alice*'s Two-Part Test. ...................... 6
   B.  Even If the Claims of the '392 Patent are Found to be Directed to an Abstract Idea, the Claims Amount to Significantly More than the Abstract Idea Itself and Pass Part Two of the Alice Test. ................................................................................................................... 8
      1.  Claim 8 Is Not Directed to an Abstract Idea and Does Contain "Inventive Concepts.".. 10
      2.  Claim 16 Is Not Directed to an Abstract Idea and Does Contain "Inventive Concepts." ........................................................................................ 13
   C.  The Dependent Claims Are Valid Because the Independent Claims Are Valid ................ 14

# **TABLE OF AUTHORITIES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. (2014) ............................................................................. 1, 2, 3, 4, 5, 6, 7, 8, 9, 12

*Card Verification Solutions, LLC v. Citigroup Inc.*,
   Case No. 13 C 6339, 2014 WL 4922524 (Sept. 29, 2014 N.D. Ill.) ........................................... 3

*CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269 (Fed. Cir. 2013)………………………………..3

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
   717 F.3d 1269 (Fed. Cir. 2013) ................................................................................................ 9

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ................................................................................................................. 4

*Fuzzysharp Tech. v. 3DLabs Inc., Ltd.*,
   2011 WL 5248297 (Fed. Cir. 2011) ........................................................................................ 12

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ................................................................................................................... 4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S.Ct. 1289 (2012) .................................................................................................. 3, 4, 6, 8, 9


*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013)……………………………..3, 6

I.  **INTRODUCTION**

The asserted claims of U.S. Patent No. 7,394,392 ('392 patent) are not directed to an abstract idea. (Doc. 1-1.) The inventions are not directed to an abstract idea. The claims are not directed to the general notion of "testing equipment operators for impairment" as Defendants Mercedes-Benz USA, LLC and Daimler AG's (collectively "Defendants") argue. (Doc. 95 at 1.) The inventions are not "a series of conventional steps that are implemented in a non-specific way using generic computer components." *Id.* The inventions cannot be performed by humans or carried out in the human mind. The patent does not provide VIS a monopoly over the entire field of "impairment detection" as Defendants implausibly argue. No claim is subject to Section 101 invalidity, and the Court's construction of "expert system(s)" in addition to the specifically claimed inventions make this clear.

Instead, the claims require screening an equipment operator for impairment in a very specific and narrow way. The claims improve on the prior art with many novel concepts (e.g. "screening … by one or more expert systems," (claim 8) "a time-sharing allocation of at least one processor…" (claim 8), and a screening module that "includes one or more expert system modules that utilize at least a portion of one or more equipment modules…" (claim 16)). Every asserted claim requires the screening of an equipment operator for impairment to be done in a manner that requires using an "expert system" as construed by the Court and is comprised of: (1) a database module that contains information a specialist would consider in an analysis of an equipment operator for impairment; (2) a decision module that applies logic for screening and testing an equipment operator for impairment and for controlling equipment, and (3) an interface module which interfaces with one or more equipment modules and the equipment operator.

1

These specific, limited claims are not directed to an abstract idea. At the very least, these claims have features that make clear the '392 patent is not monopolizing impairment detection. Therefore, the two-part test set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) verifies the patent eligibility of each asserted claim in the '392 patent.

In order to have a chance at getting past part one of the two-part test, Defendants argue that the claims are "directed to" the purportedly abstract idea of impairment testing. Defendants are incorrect as detailed below. Nevertheless, Defendants' argument concerning part one requires Defendants to argue the claims fail part two by monopolizing the idea of impairment testing itself. (Doc. 95 at 13.) Any objective reading of the claims belies Defendants' position. Defendants avoid the "additional features" in the claims at both steps in the analysis. The "additional features" in the claims beyond simple "impairment testing" necessarily prove either that the claims are not directed to an abstract idea or the claims do not monopolize impairment testing itself. Defendants' motion must be denied. Impairment testing can be performed in countless ways without infringing any claim of the '392 patent.

Defendants' first motion for judgment on the pleadings was denied without prejudice to being renewed after claim construction. (Doc. 62.) Defendants' present motion makes the same fatal mistakes of mischaracterizing the claims of the '392 patent, isolating single words and phrases in order to take the limitations out of context, and then asking this Court to go hunting for abstractions while ignoring the full context of the claims. Defendants' motion should be denied, and this case should be allowed to proceed to discovery.

## II.  LEGAL STANDARD

Rule 12(c) motions are reviewed under the same standard as a Rule 12(b) motion to dismiss. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir.

1998); *Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1380 (Fed. Cir. 2011). Courts will grant a Rule 12(c) motion "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* (internal citation omitted). "[T]he moving party must demonstrate that there are no material issues of fact to be resolved" and the court will "view the facts in the complaint in the light most favorable to the nonmoving party." *Id.* A § 101 analysis "is rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (reversing district court's dismissal under § 101).

The presumption of patent validity applies when § 101 is raised as a basis for invalidity; therefore, Defendants must prove by clear and convincing evidence that claim 8 of the '392 patent does not comply with § 101. *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013) (*aff'd, Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)).

On March 31, 2014, the Supreme Court in *Alice*, 134 S. Ct. 2347 (2014) "set forth a two-step framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Card Verification Solutions, LLC v. Citigroup Inc.*, Case No. 13 C 6339, 2014 WL 4922524, at *3 (Sept. 29, 2014 N.D. Ill.) (applying and citing to *Alice* and denying motion to dismiss pursuant to § 101 without prejudice to challenge validity after discovery and claim construction are completed). First, courts must 'determine whether the claims at issue are directed to one of those [patent-ineligible concepts].'" *Id.* (citing *Alice*, 134 S. Ct. at 2355). "If so, courts proceed to consider the elements of the claims 'to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application.'" *Id.* (citing *Alice*, 134 S. Ct. at 2355; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1297 (2012)).

3

Before conducting the § 101 analysis, the Supreme Court emphasized the caution with which courts should proceed when considering § 101 issues: "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354. The Court also noted that in order to exclude patents, there is a fine line to "pre-empt the use of an approach" that leads to a "monopoly over an abstract idea," while taking into account that "all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id*. (citing *Mayo*, 132 S.Ct., at 1293). "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. *Id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981). Moreover, "applications" of abstract concepts "to a new and useful end" remain eligible for patent protection. *Alice*, 134 S.Ct. at 2354 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

The goal of the two-part test reaffirmed in *Alice* is to distinguish patent claims regarding the "building blocks" of human ingenuity from patents that integrate the building blocks into something more and subsequently patent-eligible, such that future use of the abstract idea is not pre-empted. *Alice*, 134 S. Ct. at 2354-2355.

**III.  ARGUMENT**

Pursuant to 35 U.S.C. § 101, an invention with "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvements thereof" is patentable. "[I]t will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter. This is so because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Ultramercial, Inc.*, 722 F.3d at 1338 (citing *CLS*, 717 F.3d at 1304-05). Further, "too broad an interpretation of this exclusionary principle could eviscerate patent law." *Mayo*, 132 S.Ct. at 1293.

### A. The Asserted Claims Are Not Directed To An Abstract Idea.

#### 1. The '392 Patent Claims Present No Risk of Pre-emption and Are Therefore Patent Eligible

The Supreme Court in *Alice* explained the reason behind the exclusionary principle that laws of nature, natural phenomena, and abstract ideas are not patentable. 134 S. Ct. 2347, 2354. "We have described the concern that drives this exclusionary principle as one of pre-emption." *Id.* In other words, the goal is to not allow patents that pre-empt use of an abstract idea, because a monopoly over an abstract idea inhibits further discovery by tying up future uses of the abstract idea or the "building blocks of human ingenuity." *Id.*

The pre-emption concern at the heart of the § 101 analysis is simply not an issue in this case. The '392 patent in no way pre-empts the future use of "testing equipment operators for impairment" – the purported abstract idea according to Defendants' latest brief.[1] The '392 patent does not provide VIS a monopoly over "testing equipment operators for impairment." The '392 patent claims a novel and specific type of screening an equipment operator for impairment that cannot be performed by a human or in the human mind and that uses a specific type of computer program – an "expert system" – in a specific way that is integral to each asserted claim.

---

[1] Defendants cannot put forth a consistent argument as to step one of the *Alice* test yet ask the Court to find invalidity by clear and convincing evidence. Defendants also state that the abstract idea is "impairment testing" (Doc. 95 at 7, 9). Defendants have changed their position on the abstract idea in each of their three briefs. Defendants originally argued the abstract idea for claim 8 was "directed to the idea that equipment operators can be tested to determine whether they are impaired" or "the abstract idea of impairment detection" or "testing an equipment operator for impairment to reduce the risk of accidents" or "testing an equipment operator for impairment." (Doc. 46 at 1, 7.) Defendants' original motion (Doc. 46) did not even attempt to argue that claim 8 could be performed in the human mind but, in light of VIS's response, Defendants' reply brief added the argument and then argued the purported abstract idea was "automated impairment detection." (Doc. 51 at 1.) Defendants' first change in position recognized that its initial abstract idea improperly ignored at least one limitation of claim 8. The fact is that each of Defendants' "abstract ideas" fail to recognize the limitations of the claims in order to manufacture an invalidity argument instead of proceeding to the merits of the case.

Defendants' argument that the '392 patent pre-empts anyone from "testing equipment operators for impairment" simply ignores the plain language of the asserted claims, particularly independent claims 8 and 16. For example, one can "test an equipment operator for impairment" without infringing the '392 patent by any process or method or system that does not utilize an "expert system" or "include[] a time-sharing allocation of at least one processor..." as claimed in claim 8. (Doc. 1-1 ('392 Patent) at claim 8.)

The Federal Circuit warned that "a court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims." *Ultramercial*, 722 F.3d at 1344. Defendants once again ignore these warnings, mischaracterize the claims of the '392 patent, isolate single words and phrases in order to take the limitations out of context, and then ask this Court to "go hunting for abstractions" without acknowledging the "limitations of the invention."

### 2. Defendants' Argument Does Not Pass Step One of *Alice*'s Two-Part Test.

The asserted claims of the '392 patent are patent-eligible inventions that require screening an equipment operator for impairment in a novel, specific manner that includes the use of "one or more expert systems," which the Court construed to be:

> A computer program comprising (1) a database module that contains information a specialist would consider in an analysis of an equipment operator for impairment; (2) a decision module that applies logic for screening and testing an equipment operator for impairment and for controlling equipment, and (3) an interface module which interfaces with one or more equipment modules and the equipment operator.

(Doc. 92; Oct. 16, 2014 Proposed Order Granting Mot. for Reconsideration).[2]

---

[2] At the October 9, 2014 status conference, Plaintiff Vehicle Intelligence and Safety, LCC ("VIS") informed the Court of its intention to file a motion for reconsideration concerning the construction of the term "expert system." The Court requested an explanation of the substance of the motion and heard argument regarding VIS's request to replace the term "consisting of"

6

The claims of the '392 patent are not directed to an abstract idea. Defendants' argument that the patent *relates to* the idea of impairment detection is not relevant, because "all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract idea." *Alice*, 134 S.Ct. at 2354 (citing *Mayo*, 132 S.Ct. at 1293). The question for step one is whether the claims are *directed to* a patent-ineligible concept such as an "*idea* of itself," "a *principle*, in the abstract," "a fundamental *truth*," or "an algorithm." *See Alice*, 134 S.Ct. at 1355 (internal citations omitted) (emphasis added). The answer is no.

After the Supreme Court's *Alice* decision, the PTO issued examination instructions to its "Patent Examining Corps" to inform them how to analyze claims for patentability in light of *Alice*. Memorandum from the Deputy Commissioner For Patent Examination Policy to the USPTO Patent Examining Corps (June 25, 2014) (attached as Exhibit A). The instructions provide for analyzing all claims pursuant to the two-part analysis in *Alice* and *Mayo*. *Id.* at 2. Part 1 is to determine whether the claim is directed to an abstract idea noting that "[a]s emphasized in *Alice Corp.*, abstract ideas are excluded from eligibility based on a concern of "monopolization of the basic tools of scientific and technological work." *Id.* In analyzing part one, the PTO explains what *Alice* holds: a claim is *not* directed to an abstract idea "simply because it involves an abstract concept." Exh. A at 2; *See Alice*, 134 S.Ct. at 2355. The instructions list "[e]xamples of abstract ideas referenced in *Alice Corp.*" as fundamental economic practices, certain methods of organizing human activities, an idea of itself, and

---

with "comprising" in the construction of "expert system." Counsel for Defendants stated they respectfully disagree with the Court's construction of "expert system[s]" and reserve all rights to challenge that construction in any subsequent appeal. Subject to and without waiving those objections, Defendants did not oppose VIS's request that the term "comprising" be substituted for the terms "consisting of" in the Court's September 18, 2014 construction of "expert system[s]." The Court then instructed VIS to submit a proposed order granting the motion for reconsideration. The proposed order was submitted on October 16, 2014.

7

mathematical relationships/formulas. Claims not "directed to" an abstract idea are patent eligible and do not proceed to the analysis under part two of the *Alice* test. *Alice*, 134 S.Ct. at 2355-2356; Exh. A at 2-3.

The claims of the '392 patent bear no resemblance the abstract idea at issue in *Alice* – "intermediated settlement" – or any of the abstract ideas discussed in *Alice*. The '392 patent did not attempt to claim any "fundamental truth" or "principle, in the abstract." The '392 patent "does not invent impairment detection methods or devices. The patent discloses eleven prior art patents for impairment detection systems which are incorporated by reference." (Doc. 62 at 2.) Rather, the '392 patent overcomes the problems of the prior art, for example "by using an expert system safety screening approach…" as claimed. '392 Pat. at col. 3, l. 51-59. The '392 patent creates absolutely no pre-emption issue that risks monopolizing the field of impairment detection. This cannot be seriously disputed.

Because the '392 patent claims are not directed to an abstract idea, the § 101 analysis need not proceed to the second step of the *Alice* two-part test. Defendants' motion should be denied.

    **B.**    **Even If the Claims of the '392 Patent are Found to be Directed to an Abstract Idea, the Claims Amount to Significantly More than the Abstract Idea Itself and Pass Part Two of the Alice Test.**

If this Court finds that any claim of the '392 patent is directed to an abstract idea, the asserted claims easily satisfy the second prong of the *Alice* inquiry. Each claim contains inventive concepts and substantive limitations such that the claims do not cover the full abstract idea and do not monopolize impairment detection. The argument that any claim of the '392 patent monopolizes the idea of impairment detection (or any of Defendants' revisions of the "abstract idea" in footnote 1 above) is not plausible given the numerous, specific, and substantive

8

limitations, which cannot be performed in the human mind and need not be performed at all in order to test for impairment in a non-infringing manner.

Pursuant to *Alice*, to pass step two of the § 101 analysis (i.e., "*Mayo* step two"), a claim is examined "to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357 (citing *Mayo*, 132 S.Ct. at 1294, 1298). In other words, a claim "must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 134 S.Ct. at 2357 (citing *Mayo*, 132 S.Ct. at 1297). The elements of the '392 patent sufficiently transform the claims into a "patent-eligible application" of impairment testing. The claims provide meaningful, well-defined limits that make clear the '392 patent claims are not pre-empting the field of impairment detection and are not monopolizing what Defendants claim to be the abstract idea of "testing equipment operators for impairment." '392 Patent at claims 8, 9, 11-15, 16-18.

Independent claims 8 and 16 present a novel and inventive concept in a non-generalized manner that cannot be performed by a human, poses no pre-emption risk, includes "additional features" that ensure the '392 patent is not monopolizing the purported abstract idea of "testing equipment operators for impairment," and does "more than simply state the [purported abstract idea of "testing equipment operators for impairment"] while adding the words 'apply it.'" *See Alice*, 134 S. Ct. at 2357-2360; *Mayo*, 132 S.Ct. at 1294-1298. For these reasons, Defendants' motion must be denied even if the Court proceeds to step two in the analysis. Step two confirms the patent eligibility of the asserted claims.

### 1. Claim 8 Is Not Directed to an Abstract Idea and Does Contain "Inventive Concepts."

Defendants argue that claim 8 is not patent eligible because its steps "are conventional steps that could be performed in the human mind." (Doc. 95 at 8.) The claims cannot be performed in the human mind (e.g. "control[ling] operation of said equipment," screening with "one or more expert systems," screening that "includes a time-sharing allocation of at least one processor executing at least one expert system," interfacing "with one or more equipment modules and the equipment operator). The claims cannot be performed without the expert system. The inventions cannot be practiced without the expert system.

Defendants argue that claims 8 and 16 provide nothing more than what a police officer does "in the human mind" when performing a field-sobriety test or observing a vehicle. Defendants simply misunderstand or misread the claims. For example, a police officer cannot control operation of equipment or screen an equipment operator by use of "a time-sharing allocation of at least one processor executing at least one expert system," nor can any human practice the claimed inventions in their mind. The claimed inventions, including the steps in claim 8, are not "mentally-performable." Defendants also argue that the steps of claim 8 are "routine and conventional" but there is simply no evidence to support Defendants' comparison of screening by one or more expert systems, for example, to the "intermediated settlement" or "hedging risk" in *Bilski* or to any other longstanding commercial practice.

Defendants' argument underscores the weakness of their motion. In order to have a chance at getting past step one of the two-part test, Defendants argue that the claims are "directed to" the purportedly abstract idea of "testing equipment operators for impairment." Of course, the claims are not so directed. Even if such testing is an abstract idea, Defendants'

10

purported abstract idea ignores the screening step as claimed, controlling step as claimed, the expert system as claimed and construed, and the time-sharing allocation as claimed.

In order to argue that the claims fail the second part of the § 101 test, Defendants are then forced to argue that the claims "cover any method of testing for any kind of impairment" and "'grant a monopoly over' the abstract idea of impairment testing itself." (Doc. 95 at 13.) Defendants avoid the "additional features" in the claims at both steps in the analysis. The "additional features" in the claims necessarily prove either that the claims are not directed to an abstract idea or the claims do not monopolize impairment testing itself. Defendants' motion must be denied. Impairment testing can be performed in countless ways without infringing any claim of the '392 patent.

Regarding Defendants' table on pages 12-13 of their motion, faced with the Court's claim construction, Defendants are relegated to cherry picking single words from claim 8 and taking them out of context while ignoring the vast majority of the Court's "expert system(s)" construction. (Doc. 95 at 12-13.) Defendants' attempt to mischaracterize and take out of context the Court's construction of "expert system" should be rejected. In order to argue that the '392 patent claims do not contain inventive concepts, Defendants compare the isolated words from the '392 patent and the Court's construction and compare them to different words from different patents in a variety of cases. (Doc. 95 at 11-15.) Defendants repeatedly ignore the actual limitations at issue. This is inappropriate. The analysis must be of the '392 patent claims' limitations and their meanings and definitions within the context of this patent.

Defendants focus on but misapply the *SmartGene* case. (Doc. 95 at 16.) The court in *SmartGene* found the claims for "evaluating and selecting a therapeutic treatment regimen" were directed to patent ineligible abstract ideas, which did nothing more than call on a "computing

11

device" to do what doctors do routinely and mentally. *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. App'x. 950, 954 (Fed. Cir. 2014). First, the claims in the '392 patent are not directed to abstract ideas as detailed above. Second, the claims in *SmartGene* are not at all comparable to the '392 patent. Contrary to the claim in *SmartGene*, claim 8 does not simply claim "using a computer to perform a series of mental steps that people, aware of each step, can and regularly do perform in their heads." *SmartGene*, 555 Fed. App'x at 954; *see, e.g.,* '392 Patent, col. 15, l. 38-43. Also unlike the claim in *SmartGene*, no claim of the '392 patent can be performed without the specialized and detailed computer program that is the "expert system."

Defendants also misapply *Dealertrack* and *Alice* to argue that "expert system" is merely a generic computer according to the Court's construction of expert system. (Doc. 95 at 11.) First, it is improper to compare the "central processor" in *Dealertrack* to the processor in claim 8. The processor in claim 8 refers to a specific processor for the equipment. '392 Patent at col. 7, l. 9-22. The use of such a processor "executing at least one expert system", as construed and claimed, is a novel concept that advances the technological field of impairment detection and is not found in the prior art. Defendants' argument is implausible that the specified processor in claim 8, the Court's construction of expert system, and the required "time-sharing allocation" are longstanding, conventional steps performed by a generic computer, and the comparisons to other cases and patents are inapposite. (Doc. 95 at 11-12.)

Defendants' motion also fails because the Court did not construe expert system to be an "unspecified, generic computer." *See Alice*, 134 S.Ct. at 2360. This very specific computer *program* includes three discrete parts, none of which could be found in a generic computer. Defendants do not and cannot argue that a generic computer is comprised of what the Court held comprises an expert system in the '392 patent. Instead, Defendants pick out single words or

12

phrases from the Court's construction to argue that certain aspects of the specified computer program mirror the traits of a general computer. Of course the specific expert system program executed by the processor shares common components with a generic computer but indisputably requires much more. Defendants also fail to recognize that the '392 patent's inventions include a "time-sharing allocation of at least one processor executing at least one expert system" and utilize equipment modules, each of which advances the science and technology involved in this particular type of impairment detection. Further, the "computer program" that is the expert system in the '392 patent is integral to the claims.

### 2. Claim 16 Is Not Directed to an Abstract Idea and Does Contain "Inventive Concepts."

For the same listed reasons above as claim 8, Defendants' arguments for claim 16 fail. Moreover, claim 16 contains additional language that sets forth additional "inventive concepts." For example, to "utilize at least a portion of . . . an operations module, an audio module, a navigation module, an anti-theft module, and a climate control module" provides specific details of how the screening module and expert system are utilized. Defendants again are relegated to their police officer comparison as their only argument to invalidate claim 16. (Doc. 95 at 16.) Defendants equate a police officer observing a vehicle with a screening module utilizing "one or more expert system modules in screening," a "control module to control operation of said equipment," and screening that "includes one or more expert system modules that utilize at least a portion of one or more equipment modules consisting of: an operations module, an audio module, a navigation module, an anti-theft module, and a climate control module." This comparison is nonsensical. Any reasonable reading of claim 16 demonstrates that a police officer watching a vehicle in operation to detect driver impairment does not infringe claim 16.

13

### C. The Dependent Claims Are Valid Because the Independent Claims Are Valid.

Defendants argue that the asserted dependent claims "fail to disclose an inventive concept." (Doc. 95 at 16-19.) First, if independent claims 8 and 16 are found to be valid, all claims that are dependent on either independent claim cannot be found invalid. *See, e.g., Fuzzysharp Tech. v. 3DLabs Inc., Ltd.*, 2011 WL 5248297, at *4 (Fed. Cir. 2011); 35 U.S.C. § 282 (claims are independently presumed valid). Second, the dependent claims provide more reason why Defendants' motion should be denied in its entirety. Although claims 8 and 16 do not present a pre-emption risk to the entire field "of impairment detection itself" as Defendants' implausibly argue (Doc. 95 at 9), the dependent claims necessarily present even less risk of pre-emption because their additional limitations, elements, and inventive concepts are necessarily narrower than the independent claims. Therefore, the dependent claims need not proceed to the second step of the *Alice* test.

Third, the dependent claims contain inventive concepts. At the very least, each claim when analyzed in its entirety provides sufficiently more to the purported abstract idea of impairment detection to transform the idea into a patent eligible application. *See Alice*, 134 S.Ct. at 2357. Each claim provides sufficiently more to the purported abstract idea, which ensures that each claim is "more than a drafting effort designed to monopolize the [abstract idea]." *See Alice*, 134 S.Ct. at 2357. Therefore, the dependent claims are patent-eligible even if the Court finds that any claim is directed to an abstract idea.

Claim 9 "includes utilization of at least a portion of one or more existing equipment modules selected from the group of existing equipment modules consisting of: an operations module, an audio module, a navigation module, an anti-theft module, and a climate control module." '392 Patent at col. 15, l. 44-49. Defendants argue – or, state in conclusory fashion

without support – that using "information about the operation of equipment is a long-prevalent and conventional step of impairment testing." (Doc. 95 at 17.) Setting aside the fact that Defendants do not address the key points above, Defendants once again simplify and mischaracterize the claimed invention. Claim 9 does not simply use "information about the operation of equipment," which Defendants argue could be as basic as a police officer viewing a car; claim 9 uses "a portion of one or more existing equipment modules…." The Court pointed out this "descriptive data" in the March 13, 2014 Order. (Doc. 62 at 4.) The same is true for claims 12 and 14.

Claim 11 claims the "method of claim 8, further comprising measuring at least one characteristic of said equipment operator including one or more characteristics selected from the group consisting of…" a finite list of characteristics listed in the claim. '392 Patent at col. 15, l. 54 – col. 16, l. 6. Defendants argue claim 11 is attempting to patent laws of nature. Claim 11 is not attempting to patent any one of the characteristics listed; rather, it claims the inventive processes of claim 8 plus the step of "measuring at least one characteristic…." The same is true for claim 18, except that it depends from claim 16.

Claim 13 claims the "method of claim 8, wherein said controlling operation of said equipment includes one or more control responses selected from the group of control responses consisting of…" a finite list of control responses listed in the claim. '392 Patent at col. 16, l. 13-30. While the Court noted the list is long, it narrows the claim and controlling operation of said equipment that does not include one of the control responses in the list does not infringe the claim. Further, none of the listed control responses can be performed in the human mind. The same arguments apply to claim 17.

Claim 15 claims "the method of claim 8, wherein said selective testing selectively changes according to one or more other factors chosen from the group of factors consisting of…" the finite list of factors in the claim. '392 Patent at col. 16, l. 35-46. Defendants argue that claim 15 is directed to a different abstract idea than independent claim 8, which contradicts Defendants' arguments that all asserted claims are invalid for somehow monopolizing the entire field of impairment detection.

Defendants' motion should be denied with respect to the asserted dependent claims for the above reasons. Defendants' analysis fails to consider that each dependent claim is narrower than the independent claim and is valid for the same reasons as the independent claim along with the additional features provided for in the dependent claim.

DATED: November 6, 2014

By: /s/ Benjamin R. Askew
Anthony G. Simon
Benjamin R. Askew
Michael P. Kella
Timothy D. Krieger
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
P. 314.241.2929
F. 314.241.2029
asimon@simonlawpc.com
baskew@simonlawpc.com
mkella@simonlawpc.com
tkrieger@simonlawpc.com

Timothy E. Grochocinski
Joseph P. Oldaker
**INNOVALAW, LLC**
1900 Ravinia Place
Orland Park, Illinois 60462
P. 708.675.1974
teg@innovalaw.com
joldaker@innovalaw.com

*ATTORNEYS FOR PLAINTIFF*
*VEHICLE INTELLIGENCE AND*
*SAFETY LLC*

**CERTIFICATE OF SERVICE**

     I hereby certify that on November 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ Benjamin R. Askew</u>
Benjamin R. Askew

17